```
NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION
```
This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0547-15T2

AMERICAN DREAM AT
MARLBORO, LLC,

    Plaintiff-Respondent,

v.

PLANNING BOARD OF THE
TOWNSHIP OF MARLBORO, and
THE MAYOR AND TOWNSHIP
COUNCIL OF THE TOWNSHIP
OF MARLBORO,

    Defendants-Respondents,

and

PATRICIA CLEARY,

    Defendant/Intervenor-
    Appellant,

and

ALBERT W. RUDEL, JOANNE LIU
RUDEL, IMRICH VERDON, DANUTA
VERDON, VICTOR WAHABA, LAURA
WAHABA, R. DURAIPANDIYAN, L.
APPUKUTTAN, MORRIS KAPLAN,
CLIFFORD SNEYERS, LESLIE
SNEYERS, LILY Y. CHAO, MICHAEL
G. MEYERS, MICHELLE A. MYERS,
ROBERT G. OBEROSLER, PATRICIA P.
OBEROSLER, KWAKU BOAMAH, ESTHER
BOAMAH, JOHN A. BERARDI, RONALD

ROSSETTI, D. JORGENSEN, DENIS
COLEMAN, MARGUERITE ROSS, JOSEPH
STEFANO and NICOLE STEFANO,

    Defendants.

_____

Argued December 13, 2016 — Decided  June 9, 2017

Before Judges Reisner, Koblitz and Rothstadt.

On appeal from Superior Court of New Jersey,
Law Division, Burlington County, Docket No.
L-1909-07.

Thomas J. Trautner, Jr. argued the cause for
appellant (Chiesa Shahinian & Giantomasi, PC,
attorneys; Mr. Trautner, on the briefs).

Ronald S. Blumstein argued the cause for
respondent American Dream at Marlboro, LLC.

PER CURIAM

In this action concerning the viability of a deed restriction, the Supreme Court affirmed and modified our earlier decision to reverse and remand the Law Division's initial determination that plaintiff, American Dream at Marlboro, L.L.C., failed to demonstrate it should be relieved of the deed restriction and granting defendant/intervenor Patricia Cleary summary judgment, dismissing the complaint.  See Am. Dream at Marlboro, L.L.C. v. Planning Bd. of the Twp. of Marlboro, No. A-0738-09 (App. Div. Jan. 20, 2011), aff'd as modified, 209 N.J. 161 (2012).  In its instructions to the Law Division, the Court directed that on remand

when deciding whether plaintiff should be relieved of the restriction, the trial court should consider (a) whether there were any additional reasons for the original imposition of the deed restriction and (b) defendant's argument that plaintiff acted with unclean hands. Am. Dream at Marlboro, supra, 209 N.J. at 170-71.

Defendant[1] now appeals from the Law Division's orders entered on remand, denying her motions for summary judgment and to strike plaintiff's expert's report and testimony, and granting final judgment in favor of plaintiff. On appeal, defendant contends that the trial court's findings were not supported by the evidence, the court applied the wrong standard for determining whether a deed restriction should be vacated, and it improperly failed to strike plaintiff's expert's report and preclude his testimony because they related only to a legal issue and otherwise stated a net opinion. In addition, she argues that plaintiff failed to meet its burden of proof. She also contends that the court improperly applied the doctrine of unclean hands by giving "improper credibility and evidentiary inferences to" plaintiff and wrongfully shifting the burden of proof. Finally, defendant argues the court should have granted her motion for summary judgment

_____

[1] None of the other defendants are participating in this appeal.

because plaintiff "should have been estopped from [asserting] there were material issues of fact in dispute," and the court "should have disregarded the planning board's change in position."

We have considered defendant's contentions in light of our review of the record and the applicable legal participles. We affirm.

The history of the subject development, the application for approvals, and the deed restriction are set forth in detail in both our prior opinion, Am. Dream at Marlboro, supra, slip op. at 2-10, and the Court's opinion, Am. Dream at Marlboro, supra, 209 N.J. at 163-67. They need not be repeated at length for our purposes and can be summarized as follows. Plaintiff acquired the two subject residential projects (Beacon I and II) with knowledge that it was obligated to include in the deed to one of Beacon I's lots — a flag lot[2] — a restriction against future subdivision that was required by the Township of Marlboro's planning board when it approved the project and modification to the original plans. Plaintiff never filed the deed restriction. Defendant purchased

_____

[2]    As we explained in our earlier opinion, the lot was proposed to have "only a fifty-foot frontage on Haven Way[, and a]bsent [a] long driveway [it] would be a landlocked parcel. Such a configuration is referred to as a 'flag lot[.]'" Am. Dream at Marlboro, supra, slip op. at 3. The Court adopted the same definition. See Am. Dream at Marlboro, supra, 209 N.J. at 164.

a lot in Beacon I that cornered the original flag lot and its driveway. Plaintiff sought approval for a new plan that eliminated the flag lot by converting its driveway into a roadway leading to Beacon II property to which defendant objected, relying upon plaintiff's failure to record the deed restriction. Based on that objection, the planning board refused to consider plaintiff's application. Plaintiff filed an action in lieu of prerogative writs, seeking, among other relief, to vacate the deed restriction. That action initially resulted in the trial court denying relief to plaintiff. In addition, the court declared that the resolution granting approval for Beacon II was void because the planning board lacked jurisdiction to consider the applications in light of the deed restriction.

After the appeal from the trial court's determination, and upon the action's remand to the Law Division, defendant moved for summary judgment, arguing the court should affirm its prior decision. The court denied the motion setting forth its reasons in a written decision on April 30, 2013. The court stated in its decision that issues of fact remained in dispute that precluded summary judgment — specifically, the purpose of the deed restriction, whether there was continued justification for the deed restriction, and whether plaintiff acted with unclean hands.

5

During discovery, plaintiff produced an expert report by licensed professional planner Louis C. Joyce. The report stated that, based on his review of the board's resolutions, "[t]he concern raised by the Planning Board about the newly created flag lot centered around the possibility for the future subdivision of the lot as could be permitted under" the township's ordinances. He explained that he did "not find any direct reference or inference in the review letters or approval resolutions that there was any other concern or requirement caused by the approval of [the flag lot] other than . . . the ability and potential of the lot to be further subdivided." Thus, he concluded that the planning board imposed the deed restriction to address its concern about future subdivision of the flag lot, and that the ensuing resolution "reaffirmed [the deed restriction] for the same reasons." It was his opinion that the changed circumstances presented by the modified plan to add the new parcel and extend Haven Way as an access road eliminated not only the flag lot but also "[t]he reasons for the 'voluntary restrictions on future subdivision' stated in the 1995 approving resolution."

Defendant moved to strike the expert's report and preclude his testimony, arguing the expert improperly opined as to matters of law, offered impermissible net opinions, and was unreliable due to his failure to reference the underlying methodology. In

A-0547-15T2

response to the motion, the court scheduled a N.J.R.E. 104(a) hearing.

At the hearing, Joyce testified to his experience, background and training, and about the materials he relied upon to form his opinion regarding the purposes served by the deed restriction. He stated that the planning board's concern here about the subdivision of flag lots related to "density, . . . lots being created behind other lots where you're going to have a rear yard facing someone's front yard . . . without proper frontage[, and] . . . shared access and multiple driveways that really aren't public streets." In addition, the planning board was worried about the township's inability to "mitigate or address" any disputes that may arise between those sharing the road "as to who's going to maintain it[,] . . . plow it[, or] . . . fix it." Joyce explained the flag lot ordinance also addressed concerns about drainage, and the "requirement that a lot front on an improved or approved street" by requiring construction of a township road whenever a flag lot is divided into more than two lots. He stated that he "found nothing in the discussion or in the records [he] reviewed [that indicated] the Township required [the deed restriction] as a condition of approval," only that "it was accepted as an offer by the applicant . . . and that seemed to end the discussion."

Despite defendant's objections, the court concluded that Joyce's testimony was admissible, rejecting defendant's contention that it was a net opinion and finding that the expert explained the basis for his opinion, including his reliance on planning standards. According to the court, defendant's objections raised issues that should be visited on cross-examination of the expert at trial, but they did not establish a basis to bar his testimony.

After concluding the hearing, the trial court began the remand hearing. Plaintiff presented testimony from its expert Joyce, its president Michael Kaplan, and Gerald Sonnenblick, the attorney who appeared on its behalf at the planning board hearing seeking approval for the new lot's development. Defendant did not call any witnesses.

Joyce testified[3] that the sole purpose for the deed restriction was to prevent future subdivision of the lot. This opinion was based upon his review of the minutes of the May 17, 1995 planning board meeting and a November 23, 1994 letter from Beacon Road's engineers to the planning board, and the absence of any other reason for the deed restriction discussed in those documents. Sonnenblick testified that, based upon his discussions with Kaplan and plaintiff's engineer for the Beacon Woods projects,

---

[3] Testimony from the N.J.R.E. 104 hearing was adopted as trial testimony.

he understood that the deed restriction was imposed because the planning board "did not want . . . the [flag] lot to be subdivided into two lots with a single driveway." He also testified that, while he was aware of the deed restriction at the time of the Beacon Woods II application, he was not "aware of any law that indicated the Planning Board did not have jurisdiction or authority to reconsider" the deed restriction. Kaplan testified that, although he was aware of the deed restriction at the time plaintiff closed title on Beacon Woods I, he understood from both his current attorney and Sonnenblick that plaintiff could "get relief from the deed restriction by virtue of eliminating the [f]lag [l]ot" with the development of Beacon Woods II. He further testified that plaintiff never filed a deed restriction for the flag lot because it never conveyed the lot to another party and a deed restriction would only be recorded upon transfer.

On June 30, 2015, the trial court issued a fifty-two page written decision explaining its reasons for terminating the deed restriction and rejecting defendant's contentions about the application of the unclean hands doctrine. After recounting the factual and procedural history of the matter, the court detailed the parties' arguments. It also made credibility findings as to each of the witnesses.

The court turned to plaintiff's substantive claim and recited the standard for determining whether to eliminate a deed restriction. It found that, despite the absence of any minutes from the 1995 and 1997 planning board meetings at which the deed restriction was imposed, plaintiff had satisfied its burden of proving "by a preponderance of [the] evidence that the original purpose behind the imposition of the deed restriction by the [Planning] Board was to prevent the creation of additional flag lots." The court explained that "[t]he imposition of the deed restriction condition . . . was in direct relation to what was permissible under" the township's ordinance, which it stated requires that a flag lot cannot be divided into more than two lots without improvement of the access road. It found "that a plain reading of the language in the 1995 Resolution indicates that the [Planning] Board found the present configuration with one flag lot acceptable, however, the possibility of two flag lots was not," and "that with the applicant's voluntary restriction on future subdivision of the flag lot, [it] constituted sound planning." This language, together with "Joyce's testimony as an expert planner about why multiple flag lots are disfavored by planning boards due to issues between neighbors over the maintenance of a shared private access," formed the basis for the court's finding

A-0547-15T2

"that the purpose for the deed restriction in 1995 was to prevent the creation of two flag lots."

Turning to the 1997 Resolution, the court addressed defendant's arguments that its "references to aesthetics, adequate light, air and open space [] support her position that the deed restriction was integral to the approval of Beacon Woods II" and "that the deed restriction allows for a shortened roadway known as Haven Way." After rejecting the latter argument as being without support in the record, finding that "none of the general language in the 1997 Resolution applies to Haven Way," the court addressed the relationship between the deed restriction and the modifications underlying the 1997 Resolution. The court first found that, because "the deed restriction predated the cluster design, [it] could not have been an integral element of the cluster design" and that "[t]he 1997 Resolution merely re-imposed the deed restrictions 'based upon the variances previously granted.'" It found that nothing in the record indicated any "additional reasons for the re-imposition of the deed restriction in 1997" beyond the deed restriction's "original purpose of preventing two flag lots." The court found no evidence that the additional reasons for the deed restriction argued for by defendant were "specific to the imposition of the deed restriction."

Having resolved the question of the original purpose of the deed restriction, the court addressed whether plaintiff had satisfied its burden to demonstrate "that it has become impossible as a practical matter to accomplish th[at] purpose." The court found plaintiff had shown "by a preponderance of the evidence that the purpose of the deed restriction can no longer be accomplished if the flag lot no longer exists," as would be the case under the plans for Beacons Woods II. Thus, the court found plaintiff "ha[d] met its burden of showing the requisite change in circumstances such that [it was] entitled to relief from the deed restriction."

The court then turned to defendant's argument that plaintiff was nevertheless barred from seeking equitable relief by its unclean hands and that, because it was plaintiff who failed to satisfy its obligation to record the deed restriction, plaintiff "cannot now argue that it should become the beneficiary of the lack of an adequate record." The court first rejected defendant's argument that the court should apply "a clear and convincing standard of proof" based on its failure to record the deed restriction. According to defendant, that failure put her at a gross disadvantage in disputing the purpose of the deed restriction. The court found no evidence that the recording of the deed restriction would have stated its purpose.

A-0547-15T2

The court concluded that plaintiff had "acted with unclean hands" by certifying in its application that it fully complied with its obligation for its plans to include "a copy of any existing or proposed covenants or other deed restrictions applying to the land [to be] subdivided."  However, it also found that the failure to disclose the restriction was rendered meaningless because the court's earlier judgment in 2008 vacated the planning board's approval of the Beacon Woods II application, and "[i]f granted relief, [plaintiff] must still go before the Board seeking approval for its planned development."  The court rejected defendant's position that plaintiff's misrepresentations in its original application for approval of Beacon Woods II "operate[] as a complete bar to equitable relief from the deed restriction in perpetuity," noting that application of the doctrine of unclean hands is discretionary and "may be relaxed in the interest of fairness."  It declined to apply the doctrine of unclean hands to deny plaintiff the equitable relief it sought, relying upon plaintiff's open advertisement of the entire Beacon Woods development and belief that the planning board was aware of the deed restriction when reviewing the Beacon Woods II application. In addition, it cited to the fact that defendant did not rely upon the deed restriction when purchasing her property in Beacon Woods I.  Under these circumstances, the court concluded that plaintiff

13

was entitled to relief, despite "the fact that [plaintiff] created the change in circumstances by acquiring additional undeveloped land."

The court entered final judgment in favor of plaintiff on August 24, 2015. On October 2, 2015, it entered an order memorializing its earlier decision to deny defendant's motion to bar Joyce's report and testimony. This appeal followed.

We begin our review by acknowledging that it is limited under the "well-established . . . standards we apply in reviewing the findings and conclusions of a trial court following a bench trial." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., ____ N.J. ____,____ (2017) (slip op. at 42). Under those standards,

> we give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974). Reviewing appellate courts should "not disturb the factual findings and legal conclusions of the trial judge" unless convinced that those findings and conclusions were "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 484 (citation and internal quotation marks omitted); see, e.g., Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011) (same).
>
> [Ibid. (quoting Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015).]

However, "[q]uestions of law receive de novo review." Ibid.

14

Applying those standards, we turn first to the Court's direction to the trial court to assess on remand whether there were reasons for the deed restriction other than to prevent the subdivision of the flag lot and to defendant's contentions that the trial court's determination of that issue was not correct. Defendant contends the court ignored at least one additional purpose of the deed restriction that remains viable — to "preserve the approved lot layout of the Beacon Woods Subdivision," a "smaller scale neighborhood type development with limited on-site roadways." She also contends that the court misinterpreted the language of the planning board's resolutions, the changed-circumstances standard it had to apply, and the flag lot ordinance. Defendant additionally argues that the court improperly shifted the burden of proof by failing to require plaintiff to prove its entitlement to the elimination of the deed restriction by clear and convincing evidence because the deed restriction, if recorded, would have favored defendant's position, likening plaintiff's failure to record the deed to the spoliation of evidence. We disagree.

We conclude from our review that the trial court properly determined there was no evidence of concerns, other than the possible subdivision of the flag lot, that the deed restriction was meant to address. Thus, the continued imposition of the deed

A-0547-15T2

restriction after plaintiff modified its plans to eliminate that lot was unwarranted. We affirm substantially for the reasons expressed by the trial court in its comprehensive June 30, 2015 written decision. We add the following comments.

A party seeking to eliminate a deed restriction based on changed circumstances must "demonstrate that it has become 'impossible as a practical matter to accomplish the purpose for which'" the restriction was imposed. Am. Dream at Marlboro, supra, 209 N.J. at 169 (quoting Citizens Voices Ass'n v. Collings Lakes Civic Ass'n, 396 N.J. Super. 432, 446 (App. Div. 2007)). "[T]he test is stringent: relief is granted only if the purpose of the servitude can no longer be accomplished." Ibid. (quoting Citizens Voices, supra, 396 N.J. Super. at 446). It must be "clear that the continuance of the servitude would serve no useful purpose and would create unnecessary harm to the owner of the servient estate." Ibid. (quoting Restatement (Third) Property: Servitudes § 7:10 comment a (2000)). We are satisfied, as was the trial court, that plaintiff met that burden based upon the elimination of the flag lot.

The planning board's resolutions never expressed any specific reason for the deed restriction, other than referencing that there was to be a restriction on any future subdivision of the flag lot and, with that restriction, "the present configuration and

voluntary restriction on future subdivision constitute[d] sound planning." Although defendant argued that the language found in portions of the resolutions could be interpreted to suggest other concerns, neither she nor plaintiff adduced any evidence to support that contention. The trial court was left with no other evidence to support or contradict a finding that the deed restriction was part of an effort to accomplish some other goal. Accordingly, at best the purpose of the deed restriction was to prevent multiple lots with shared driveways, and at worst the restriction's purpose was ambiguous.

"An ambiguous restriction will not be enforced in equity so as to impair the alienability or use of property." Cooper River Plaza East, LLC v. Briad Grp., 359 N.J. Super. 518, 529 (App. Div. 2003). Because restrictions on the use of one's land are disfavored, "[t]hey are always to be strictly construed." Freedman v. Sufrin, 443 N.J. Super. 128, 131 (App. Div. 2015) (quoting Bruno v. Hanna, 63 N.J. Super. 282, 285 (App. Div. 1960)). While this rule "will not be applied to defeat the obvious purpose of a restriction[,] . . . the meaning of a restrictive covenant will not be extended by implication and all doubts and ambiguities must be resolved in favor of the owner's unrestricted use of the land." Ibid. (alterations in original) (quoting Bruno, supra, 63 N.J. Super. at 287). Therefore, without evidence of another meaningful

17

purpose the trial court properly determined that the restriction should no longer be enforceable.

We similarly agree with the trial court's determination that plaintiff's unclean hands did not bar the court from granting plaintiff the equitable remedy of relief from a deed restriction. We find no merit to defendant's arguments to the contrary.

The application of the doctrine of unclean hands is within the court's discretion. Borough of Princeton v. Bd. of Chosen Freeholders, 169 N.J. 135, 158 (2001). According to "[t]he equitable maxim[,] '[a party] who comes into equity must be with clean hands.'" Heuer v. Heuer, 152 N.J. 226, 238 (1998). It provides that "a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." Borough of Princeton, supra, 169 N.J. at 158. However, its application is limited, see Heuer, supra, 152 N.J. at 238, as it does not require a court to bar a litigant from seeking or obtaining relief from the court because the doctrine "should not be used as punishment[,] but to further the advancement of right and justice." Pellitteri v. Pellitteri, 266 N.J. Super. 56, 65 (App. Div. 1993). "It is the effect of the inequitable conduct on the total transaction which is determinative whether the maxim shall or shall not be applied." Heuer, supra, 152 N.J. at 238 (quoting Untermann v. Untermann, 19 N.J. 507, 518 (1955).

18                                                    A-0547-15T2

> It does not repel all sinners from courts of equity, nor does it apply to every unconscientious act or inequitable conduct on the part of the complainants. The inequity which deprives a suitor of a right to justice in a court of equity is not general iniquitous conduct unconnected with the act of the defendant which the complaining party states as his ground or cause of action; but it must be evil practice or wrong conduct in the particular matter or transaction in respect to which judicial protection or redress is sought.
>
> [Heuer, supra, 152 N.J. at 238 (quoting Neubeck v. Neubeck, 94 N.J. Eq. 167, 170 (E. & A. 1922)).]

"It is the effect of the inequitable conduct on the total transaction which is determinative whether the maxim shall or shall not be applied." Ibid. (quoting Untermann, supra, 19 N.J. at 518).

We conclude from our review that the trial court correctly determined that, although plaintiff acted with unclean hands by failing to record the deed restriction, there was no evidence that its failure had an impact on any transaction. Specifically, there was no evidence that defendant was adversely effected. Certainly, had plaintiff sought to subdivide the flag lot in contravention of what should have been a deed restriction, defendant would have a viable claim based upon unclean hands. However, the deed restriction did not guarantee to defendant or anyone else that the approved flag lot would forever be maintained, just that it could

19

not be subdivided.  Once plaintiff's plans were modified to remove the flag lot, there was simply nothing that required restricting further development from happening in the future.  In other words, the restriction on the flag lot's title did not prevent construction of additional homes in either project.  Also, as the trial court observed, the fact that plaintiff was relieved of the deed restriction does not mean that it is automatically entitled to the approvals that it must still obtain from the planning board.

To the extent we have not specifically addressed any of defendant's remaining arguments, we find them to be without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION