**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3685-22

NEWARK ADAMS
ASSOCIATES, LLC,

     Plaintiff-Appellant,

v.

SUMO ENTERPRISES, INC.,
UNDERGROUND UTILITIES
CORP., a/k/a UNDERGROUND
UTILITIES, INC., and
CITY OF NEWARK,

     Defendants-Respondents.

_____

Submitted November 19, 2024 – Decided April 9, 2025

Before Judges Gilson, Bishop-Thompson, and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000059-22.

Cole Schotz, PC, attorneys for appellant (Mitchell W. Abrahams, Lauren M. Manduke, and Gianna L. Zapata, of counsel and on the briefs).

Michael A. Armstrong & Associates, LLC, attorneys for respondent City of Newark (Morrison Kent Fairbairn, Cristal Holmes-Bowie, and Alexis A. Cotsalas, on the brief).

Hill Wallack, LLP, attorneys for respondents Sumo Enterprises, Inc. and Underground Utilities Corp. (Eric I. Abraham, of counsel and on the brief).

PER CURIAM

This appeal arises from a dispute regarding the building of a multi-level parking garage in the City of Newark (City). Plaintiff Newark Adams Associates, L.L.C., appeals from a June 21, 2023, order granting summary judgment in favor of defendants Sumo Enterprises, Inc. (Sumo), Underground Utilities Corporation a/k/a Underground Utilities, Inc. (UUC), and the City (collectively, defendants) and dismissing its complaint. We affirm.

I.

We glean the facts from the summary judgment record, viewing the facts in the light most favorable to plaintiff as the non-moving party. Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 125 (2023). In 1986, plaintiff purchased commercial property from the City known as the Newark Adams Center, a fourteen-store retail shopping center, located at 64-88 Adams Street. The rear of plaintiff's property directly abuts 85-101 Jackson Street (Property), which is co-owned by UUC and Sumo. Plaintiff and Sumo are parties to a lease that

2

A-3685-22

permits plaintiff to open three doors of its shopping center out onto the Property, avoiding the need to construct expensive fire-related egress from plaintiff's building. The lease also allows Sumo to terminate the lease on ninety days' written notice.

The Property is in the boundaries of the 2001 Redevelopment Plan, which permits commercial and retail use. The plan also provided for a "multi-tier public parking structure and office space as permitted under the applicable existing Federal and State regulations . . . and as allowed in the B2 Zoning Districts." No parking decking was mandated.

In August 2004, the City passed an ordinance approving the "Amended Jackson-Downing Redevelopment Plan," which provided that "[z]oning for this area shall permit a multi-tier public parking structure and office space facility as permitted under applicable existing Federal and State regulations . . . Zoning for this area shall also permit commercial/reuse consistent with that allowed in BS Zoning Districts."

Thereafter, the City and UUC entered an "Agreement for Sale of Land and Redevelopment of Jackson-Downing (2004 Agreement)," which contain three sections relevant to this appeal. Section 101(1) – IMPROVEMENTS, provided that UUC can "construct a multi-level parking garage with the capacity of

approximately 375 cars, all in conformance with [City's] Site Plan Ordinance, except as otherwise approved by City and/or the Central Planning Board or Board of Adjustment . . . ." Section 1101(E) – EVENTS OF DEFAULT BY REDEVELOPER; NOTICE; REMEDIES, states, in relevant part, the City had the "right to re-enter and take possession and to terminate the estate" in the event of default by UUC. Lastly, Section 1310 – NO THIRD[-]PARTY RIGHTS, stated that "nothing contained in this [2004] Agreement [was] intended to nor shall [] be construed to create any rights" to persons not a party to this Agreement.

In September 2005, the Municipal Council passed a resolution authorizing the 2004 Agreement between the City and the UUC. Thereafter, in November 2005, the deed (2005 Deed), conveying a portion of the property from the City to UUC, expressly stated the conveyance was "[s]ubject to the terms and conditions set forth in the [2004 Agreement]" and "subject further to the [2004] Amended Jackson[-]Downing Redevelopment Plan as adopted by the Municipal Council pursuant to Ordinance 6S [and] FJ, dated August 4, 2004." The 2005 Deed made no reference to a right of reentry and possession in the event UUC defaulted.

4

The City's Central Planning Board (CPB) adopted a new master plan in September 2012, to address, among other issues, zoning, development, and redevelopment. The plan sought to "[r]evise parking standards to encourage the redevelopment of surface parking lots" by "[d]iscouraging new surface parking lots as a matter of right in certain areas of downtown," "[r]evising downtown parking standards to promote shared parking," and "[r]educing downtown parking ratio requirements." Two years later, the City released a Newark Redevelopment Boundary Map.

Thereafter, in February 2015, the City determined that many previously existing redevelopment plans did not align with the 2012 Master Plan's objectives. The Municipal Council subsequently passed Ordinance 6PFSF-C, which repealed prior redevelopment plans, including the 2001 Redevelopment Plan upon which the 2004 Agreement was based.

As of June 2021, UUC had not constructed the multi-level parking garage on the Property. Rather, UUC and Sumo applied to the CPB to construct a multi-level, mixed-use commercial and residential building.

On October 15, 2021, the City notified UUC that it had defaulted on the 2004 Agreement by not moving forward with the parking garage and that the

A-3685-22

City would "enforce" its rights under the [2004] [A]greement "to re-enter and take possession" of the Property.

In January 2022, plaintiff objected to the mixed-use project, arguing that UUC and Sumo were required to build the parking garage under the 2004 Agreement. Plaintiff also requested the City to re-enter or re-take possession of the Property, contending UUC and Sumo had defaulted on the 2004 Agreement.

That same month, the CPB approved the preliminary and final site plans for UUC and Sumo's application for its mixed-use project subject to the City's 2020 Redevelopment Plan and memorialized its approval in a resolution. Regarding the parking for the mixed-use site, the resolution stated, "[t]here is a 20-foot-wide driveway" on the property that would "provide[] access to seven (7) surface parking spaces and one (1) . . . load space." The resolution also provided the Property "is in the [2020] Jackson and Ferry Redevelopment Area where mixed-use development is permitted."

In February 2022, UUC and Sumo replied to the City's letter regarding the defaulted 2004 Agreement because the parking garage had yet to be constructed. According to defendants, the project had "transformed over time with the City's input and approval." They further asserted a feasibility study was conducted, which determined the construction of a parking garage "became impractical"

because "[P]roperty [would] operate[] at a negative cashflow as a parking lot." The City's Parking Authority relinquished its rights to the Property and supported UUC and Sumo's development of the Property into a mixed-use facility. No further action was taken by the City.

In March 2022, plaintiff filed its first prerogative writs complaint against UUC, Sumo, and the CPB, docket number ESX-L-1530-22, asserting the CPB's approval was "unlawful" based on numerous defects in the approval of UUC and Sumo's application to construct a nine-story commercial and residential building on the Property. The trial date was scheduled for May 22, 2023.

Plaintiff filed this matter in April 2022, against defendants regarding the construction of the parking garage. Plaintiff asserted claims for specific performance of the 2004 Agreement, declaratory judgment compelling UUC to construct the five-story parking garage, or in the alternative compelling the City to re-take possession of the Property, breach of contract, and tortious interference with contract and with prospective economic advantage.

Plaintiff then initiated a third lawsuit in March 2023. In that third suit, plaintiff filed a second prerogative writs complaint against UUC, Sumo, the CPB and the Municipal Council, under docket number ESX-L-1854-22, sought to have the 2020 Jackson and Ferry Redevelopment Plan deemed void and prohibit

the construction of the nine-story commercial and residential building on the Property.

Before the conclusion of discovery in this matter, defendants moved for summary judgment, arguing plaintiff was precluded from asserting any rights as a third-party under Section 1310 of the 2004 Agreement. Plaintiff opposed defendants' motion and argued there were questions of material fact that required the completion of discovery. It also cross-moved to stay this matter pending the adjudication of its second prerogative writs action.

Following oral argument on June 21, 2023, the trial court granted defendants' motions for summary judgment. In a written decision, the court reasoned plaintiff did not have taxpayer standing to file the matter against defendants because it was not a party to nor the intended beneficiary of the 2004 Agreement. The court further found the 2004 Agreement did not expressly mandate the "exclusive use" of the Property as a parking garage. In that regard, the court also "did not find the language in the 2004 Agreement to be a deed restriction."

The court also denied plaintiff's cross-motion to stay the trial in the first prerogative writs matter, finding its application did not meet the standard under Crowe v. De Gioia, 90 N.J. 126, 133 (1982) and Garden State Equal. v. Dow,

216 N.J. 314 (2013). The court also determined the two prerogative writs actions are related to the approvals for UUC and Sumo's recent site plan, and therefore, plaintiff had the potential for an adequate remedy at law. A memorializing order was entered. This appeal followed.

## II.

On appeal, plaintiff raises five arguments for our consideration. It first argues the trial court erred in finding that plaintiff lacked standing as a taxpayer to bring the action challenging the municipal actions. Second, the trial court erred in finding there was no deed restriction because the 2004 Agreement and deed remain valid and enforceable. Third, the court erred in finding plaintiff was not an intended beneficiary of the 2004 Agreement. Fourth, plaintiff contended that the court abused its discretion in granting summary judgment when "significant" discovery remained outstanding. Lastly, the trial court erred by finding plaintiff had a sufficient remedy in the two pending prerogative writs matters.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

"Whether a party has standing to pursue a claim is a question of law subject to de novo review." Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414 (2018). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

A.    Standing as a Taxpayer and Intended Third-Party Beneficiary.

We first address plaintiff's arguments in Points I and III that the trial court erred in finding it did not have standing as a taxpayer or a third-party beneficiary to the 2004 Agreement. "Unlike the federal system, our Supreme Court defines standing broadly and does not restrict New Jersey courts to the rigid 'case or controversy' requirement under Article III, § 2 of the United States

Constitution." State v. Lavrik, 472 N.J. Super. 192, 204 (App. Div. 2022). "Standing is a threshold justiciability determination of whether the plaintiff is entitled to initiate and maintain an action on the matter before the court." Spinnaker Condo. Corp. v. Zoning Bd. of Sea Isle City, 357 N.J. Super. 105, 110 (App. Div. 2003). To have standing, a plaintiff must have "a sufficient stake and real adverseness with respect to the subject matter of the litigation [and a] substantial likelihood of some harm . . . in the event of an unfavorable decision . . . ." Jen Elec., Inc. v. Cnty. of Essex, 197 N.J. 627, 645 (2009) (first alteration in original) (quoting In re Adoption of Baby T, 160 N.J 332, 340 (1999)). Thus, "standing 'is not automatic, and a litigant usually has no standing to assert the rights of a third party.'" Bondi v. Citigroup, Inc., 423 N.J. Super. 377, 436 (App. Div. 2011) (quoting In re Six Month Extension of N.J.A.C. 5:91-1 et seq., 372 N.J. Super. 61, 85 (App. Div. 2004)).

Plaintiff argues that the trial court's ruling contradicted well established precedent concerning its standing as a taxpayer and third-party beneficiary. Plaintiff relies on Koch v. Borough of Seaside Heights, 40 N.J. Super. 86 (App. Div.), aff'd, 22 N.J. 218 (1956) (taxpayer entitled to enjoin the maintenance of commercial buildings on land formerly used for public parking because the commercial buildings were built under illegal lease agreements between the

municipality and private parties) and <u>Dover Twp. Homeowners & Tenants Ass'n v. Dover Twp.</u>, 114 N.J. Super. 270, 275-76 (App. Div. 1971) (holding that resident taxpayers had standing "[s]ince the matter raised by the complaint alleges illegality on the part of the planning board affecting the integrity of the zoning ordinance of the township").

Plaintiff does not cite to any evidence in the record showing the City's actions were ultra vires. Instead, plaintiff mistakenly relies on <u>Koch</u> and <u>Dover</u>, which are factually distinguishable. Here, unlike <u>Koch</u>, UUC legally purchased the Property from the City for commercial use. The record does not show any illegality on the part of the CPB.

Unlike <u>Dover</u>, plaintiff does not show how the Municipal Council's adoption of the 2004 Agreement and the subsequent adoption of the 2015 ordinance and 2020 Redevelopment Plan altered the integrity of the City's zoning ordinance. The appropriate avenue for plaintiff to challenge those municipal actions was in the two separate prerogative writ matters. We, therefore, hold plaintiff did not demonstrate any "great interest" to establish standing as a taxpayer to enforce the 2004 Agreement.

Plaintiff next argues it is a third-party beneficiary of the 2004 Agreement because "the primary objective of the Agreement [was] to benefit the residents

of the City." It relies on Soussa v. Denville Twp. Plan. Bd., 238 N.J. Super. 66, 69 (App. Div. 1990), where plaintiffs executed a deed that contained a deed restriction based on a resolution of the local planning board that was inserted for the benefit of the public. We are unpersuaded by plaintiff's argument.

N.J.S.A. 2A:15-2 provides that "[a] person for whose benefit a contract is made, either simple or sealed, may sue thereon in any court . . . ." The standard applied by our courts in determining third-party beneficiary status is "whether the contracting parties intended that a third[-]party beneficiary should receive a benefit which might be enforced in courts . . . ." Rieder Cmtys. Inc. v. Twp. of N. Brunswick, 227 N.J. Super 214, 222 (App. Div. 1988) (second alteration in original) (quoting Brooklawn v. Brooklawn Hous. Corp., 124 N.J.L. 73, 77 (E. & A. 1940)). "If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing." Broadway Maint. Corp. v. Rutgers, The State Univ., 90 N.J. 253, 259 (1982).

Based on the record, we conclude Soussa is inapposite to this matter. Here, there was a private agreement between UUC and the City. Unlike the plaintiffs in Sousa, these plaintiffs were not parties to the 2004 Agreement. Moreover, Section 1301 clearly and unambiguously provided that "[n]othing contained within this [a]greement is intended to nor shall it be construed to

13

create any rights of any kind whatsoever in persons not party to this [a]greement." The 2005 Deed neither referenced nor created any third-party interests in the City's residents. The 2004 Agreement did not restrict the property to be used exclusively as a parking garage. Moreover, the 2004 Agreement was modified by the 2015 ordinance, which adopted new zoning and land use restrictions. We hold plaintiff has not established that it was an intended third-party beneficiary of the 2004 Agreement between the City and UUC and, therefore, it had no right to enforce the agreement.

B. <u>Deed Restriction</u>.

Plaintiff further argues in the 2004 Agreement, which was incorporated into the 2005 Deed, the City sold the Property to UUC "for the construction of the parking garage for the 'vital and best interests of the City of Newark' and to promote the 'health, safety, morals and welfare of its residents, in accordance with public purposes[.]'" In support of that argument, plaintiff relies on Article I Project: Improvements, Section 101 – Improvements, which stated: "the Redeveloper shall construct a multi-level parking garage with a capacity of approximately 375 cars, all in conformance with the [City's] Site Plan Ordinance, except as otherwise approved by [the] City and/or the Central planning Board or Board of Adjustment."

14

"Restrictions on the use to which land may be put are not favored in law because they impair alienability." Bruno v. Hanna, 63 N.J. Super. 282, 285 (App. Div. 1960). As a result, "courts will not aid one person to restrict another in the use of his [or her] land unless the right to restrict is made manifest and clear in the restrictive covenant." Berger v. State, 71 N.J. 206, 215 (1976) (quoting Bruno, 63 N.J. Super. at 285) (internal quotation marks omitted).

We review de novo the interpretation and construction of a deed as a matter of law. Cooper River Plaza E., LLC v. Briad Grp., 359 N.J. Super. 518, 528 (App. Div. 2003). Therefore, we analyze a deed restriction "in accordance with the principles of contract interpretation, which include a determination of the intention of the parties as revealed by the language used by them." Id. at 527; see also Homann v. Torchinsky, 296 N.J. Super. 326, 334 (App. Div. 1997) (explaining "[a] restrictive covenant [in a deed] is a contract" (first alteration in original) (quoting Weinstein v. Swartz, 3 N.J. 80, 86 (1949))).

Plaintiff's interpretation ignores that the 2001 and 2004 Agreements were repealed by the City's 2015 ordinance and subsequent 2020 Redevelopment Plan because they were inconsistent with the City's redevelopment goals. Simply stated, plaintiff's contention that the prior Agreements remain incorporated into the 2005 Deed is not supported by the record.

We must interpret the 2005 Deed reasonably and in the context of 2015 ordinance and subsequent 2020 Redevelopment Plan, and we therefore give effect to its plain language. See Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002). Having reviewed the record, we reject plaintiff's argument that the 2005 Deed restricted UUC's use of the Property to the construction of a parking deck.

C.   Incomplete Discovery.

Lastly, plaintiff argues summary judgment was improvidently granted because discovery had not been completed. Plaintiff contends "the City did not complete its production, provide a Rule-compliant privilege log, or produce an agent for testimony to . . . explain the status of the default the City declared against UUC in October 2021." Plaintiff further argues discovery was needed to determine "what resolution, if any, was reached between UUC and the City regarding its default, and why there [were] competing versions of the 2020 Redevelopment Plan."

Summary judgment is generally inappropriate prior to the completion of discovery. Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193 (1988). However, "summary judgment is not premature merely because discovery has not been completed, unless" the non-moving party can show "'with some degree

of particularity the likelihood that further discovery will supply the missing elements of the cause of action.'" Friedman, 242 N.J. at 472-73 (quoting Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015)). There is no need to complete further discovery "if it will patently not change the outcome." Minoia v. Kushner, 365 N.J. Super. 304, 307 (App. Div. 2004).

Here, plaintiff has not identified any specific discovery; instead, it makes a generalized assertion that depositions and documents production was needed. Plaintiff, however, has not cited to a specific document or deposition that would have supplied the missing elements of its claims and altered the motion's outcome. Thus, plaintiff's argument that the motion was not ripe for determination based upon incomplete discovery lacks merit. Indeed, as our analysis has shown the issues in this matter turn on the interpretation of the various agreements and deed.

In sum, based on our de novo review, we conclude there was no material genuine factual dispute, and the court properly granted defendants' motion for summary judgment. To the extent we have not addressed any of plaintiff's remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3 (e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3685-22